IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| ELDON L. & IRENE V. ZYSSET, ) | |
| ) | CASE NO. BK08-40254-TLS |
| Debtor(s). ) | A08-4037-TLS |
| PHILIP M. KELLY, Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| ) | |
| vs. ) | |
| ) | |
| GOTHENBURG STATE BANK & ) | |
| TRUST COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter is before the court on cross-motions for summary judgment by the plaintiff (Fil. #15) and the defendant (Fil. #19). Philip Kelly represents himself as plaintiff, and Steve Windrum represents the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

The plaintiff's motion is denied. The defendant's motion is granted.

The Chapter 7 trustee filed this adversary proceeding to avoid a lien held on the debtors' vehicle by Gothenburg State Bank & Trust Company. The trustee alleges that the bank failed to timely perfect its security interest by noting its lien on the vehicle's title. In addition, the trustee seeks the recovery of any payments made by the debtors to the bank within 90 days prior to the bankruptcy filing and at any time after the bankruptcy filing.

Each party has moved for summary judgment, on the grounds that no genuine issues of material fact exist.

The parties agree that the following facts are uncontroverted:

1.  Irene Zysset purchased a 2008 Pontiac Vibe automobile from Pony Express Chevrolet in Gothenburg, Nebraska, on November 16, 2007.

2. The debtors borrowed $30,069.87 from Gothenburg State Bank & Trust Company on November 16, 2007. Of that amount, $9,415.00 was paid to the car dealership for the Vibe. The balance was used to pay off a prior promissory note secured by Mrs. Zysset's 2004 Jeep Liberty, which was traded in on the Vibe.

3. Mrs. Zysset took possession of the Vibe on November 16, 2007.

4. In connection with the loan, Mrs. Zysset executed a promissory note, disclosure and security agreement, and a separate consumer security agreement with the bank on November 16, 2007, giving the bank a security interest in the new vehicle. Mr. Zysset's signature was needed on the documents as well, but he was not present and did not sign on November 16, 2007. He did appear at the bank and sign the documents in December 2007, likely on December 17 when the debtors were attempting to obtain a certificate of title for the vehicle. Upon obtaining his signatures, the bank provided him with the manufacturer's certificate of origin for delivery to the county treasurer.

5. The debtors applied for a certificate of title in December 2007. The application contains the typed date of November 16, 2007, next to the debtors' signatures, but all agree that only Mrs. Zysset signed on that date, and Mr. Zysset signed on a later date, likely December 17 or 18, 2007. The section of the application containing lien information erroneously stated "No Lien." The title was issued on December 18, 2007.

6. Gothenburg State Bank was added to the title on December 19, 2007, as the holder of the first lien.

7. The debtors filed their Chapter 7 bankruptcy petition on February 6, 2008.

8. The debtors made monthly payments of $632.25 on the loan. Two payments, totaling $1,264.50, were made pre-petition, and three payments, totaling $1,896.75, were made post-petition.

9. The vehicle has been sold and the $13,500 in proceeds are being held in the estate account pending further order of the court.

The trustee has the avoiding powers of a lien creditor and as such, holds an interest superior to that of the holder of an unperfected security interest. 11 U.S.C. § 544(a). The trustee asserts that the bank's lien is avoidable as a preference, pursuant to § 547(b). His claim for recovery of the post-petition payments is based on § 549(a), on the grounds that the debtors transferred property of the bankruptcy estate to the bank post-petition and without court authorization.

The avoidance powers in the Bankruptcy Code give the trustee authority to avoid any transfer of an interest of the debtor in property –

>   (1) to or for the benefit of a creditor;
>   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>   (3) made while the debtor was insolvent;
>   (4) made –
>       (A) on or within 90 days before the date of the filing of the petition; or
>       (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>   (5) that enables such creditor to receive more than such creditor would receive if –
>       (A) the case were a case under chapter 7 of this title;
>       (B) the transfer had not been made; and
>       (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The trustee takes the position that because the debtors, or at least Mrs. Zysset, signed the purchase contract, promissory note and security agreement, and took possession of the vehicle, on November 16th, but the lien was not noted on the certificate of title until December 19th, the transfer of the property interest occurred after the debt was incurred. Under the most common method of perfecting a lien on a motor vehicle – noting the lien on the title certificate – the trustee is correct. However, the Nebraska statute governing the perfection of liens on motor vehicles provides that possession of the appropriate documentation by the secured party will also serve to perfect the lien against a debtor's creditors, subsequent purchasers, secured parties, other lienholders or claimants. Neb. Rev. Stat. § 60-164(1). That language is as follows:

>   § 60-164. Liens on motor vehicles; when valid; notation on certificate; inventory, exception; priority; adjustment to rental price; how construed; notation of cancellation; failure to deliver certificate; damages; release.
>
>   (1) Except as provided in section 60-165, the provisions of article 9, Uniform Commercial Code, shall never be construed to apply to or to permit or require the deposit, filing, or other record whatsoever of a security agreement, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or similar instrument or any copy of the same covering a vehicle. *Any mortgage, conveyance intended to operate as a security agreement as provided by article 9, Uniform Commercial Code, trust receipt, conditional sales contract, or other similar instrument covering a vehicle, if such instrument is accompanied by delivery of such manufacturer's or importer's certificate and followed by actual and continued possession of the same by the holder of such instrument* or, in the case of a certificate of title, if a notation of the same has been made by the county clerk, designated county official, or department on the face thereof, *shall be valid as against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants* but otherwise shall

>    not be valid against them, except that during any period in which a vehicle is inventory, as defined in section 9-102, Uniform Commercial Code, held for sale by a person or corporation that is required to be licensed as provided in Chapter 60, article 14, and is in the business of selling such vehicles, the filing provisions of article 9, Uniform Commercial Code, as applied to inventory, shall apply to a security interest in such vehicle created by such person or corporation as debtor without the notation of lien on the instrument of title. A buyer of a vehicle at retail from a dealer required to be licensed as provided in Chapter 60, article 14, shall take such vehicle free of any security interest.

Neb. Rev. Stat. § 60-164(1) (emphasis added).

There have been no reported cases interpreting this language, so I simply follow the plain language of the statute. Affidavit evidence from a loan clerk at the bank indicates the bank maintained physical possession of the consumer security agreement and the note, disclosure and security agreement executed on November 16th by Mrs. Zysset, as well as the General Motors' certificate of origin for the vehicle, until Mr. Zysset arrived at the bank on December 17th to sign the documents and take them to the county treasurer that day to obtain the certificate of title. Mr. Zysset then personally delivered the title to the bank, where the loan clerk mailed the title and the bank's security agreement to the county treasurer for purposes of recording the lien. The treasurer noted the lien and mailed the title back to the bank, which maintained possession of it thereafter.

In light of the Nebraska statutory language, the bank's continued possession of the security documents with the vehicle's certificate of origin – without which the debtors could not obtain a certificate of title – perfected its lien from and after the date of the vehicle purchase. Based on this conclusion, I need not reach the remainder of the bank's arguments with regard to whether the transaction was preferential, nor its invocation of the defenses available under § 547(c) and (e).

Finally, with regard to the trustee's allegation that the debtors' post-petition payments for the vehicle are avoidable under § 549(a) as an unauthorized transfer of property of the estate, his motion for summary judgment must be denied. The bank provided affidavit evidence of Mrs. Zysset that the monthly vehicle payments made post-petition were from her current earnings at the time of payment. While the balance of the debtors' bank accounts on the petition date constitutes property of the bankruptcy estate, earnings from services performed by an individual debtor after the commencement of a case are not property of the estate. § 541(a)(6). Moreover, the bank account balances on the petition date were insufficient to make a full monthly vehicle payment, so the bulk of the funds used for those payments must have been earned post-petition.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056). Having found no genuine factual issue in dispute here, and having decided the legal issues in the bank's favor, summary judgment will be entered for the defendant bank.

      IT IS ORDERED: The plaintiff's motion for summary judgment (Fil. #15) is denied. The defendant's motion for summary judgment (Fil. #19) is granted. Neither the lien nor the payments are avoidable. Separate judgment will be entered.

      DATED:  September 11, 2008.

                                    BY THE COURT:

                                    /s/ Thomas L. Saladino
                                    Chief Judge

Notice given by the Court to:
      *Philip Kelly
      *Steve Windrum
      U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.